Robert G. L'HEUREUX

v.

CENTRAL AMERICAN AIRWAYS FLYING SERVICE, INC.

Civ. No. 13702.

United States District Court
D. Maryland.

Oct. 26, 1962.

Joseph J. Askin, Baltimore, Md., for plaintiff.

Thomas G. Andrew and Rollins, Smalkin, Weston & Andrew, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Defendant seeks dismissal of this action on the ground of improper venue. The precise question presented does not appear to have been decided in any reported case, and calls for a consideration both of 28 U.S.C.A. § 1391(c) and the Neirbo doctrine.

Plaintiff is a citizen of Connecticut. Defendant is a Kentucky corporation, which did business in the State and Dis-

trict of Maryland during the years 1959 and 1960, operating a training program for pilots of military aircraft, but did not qualify to do business under the Maryland statutes. See Anno.Code of Md., 1957 ed., Art. 23, sec. 90 et seq. Plaintiff alleges that on April 3, 1959, while on a training flight, he was injured when the plane crashed near Baltimore, Md., as a result of the negligence of defendant's employees. This action was brought on April 2, 1962.

Defendant challenges venue only. It concedes federal diversity jurisdiction and does not contend that the service of process was improper.[1]

Prior to 1948 venue in an action in a federal court against a corporation could be laid properly only in the district of its incorporation or in the district in which the plaintiff resided. See Suttle v. Reich Bros. Const. Co., 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614 (1948); Robert E. Lee Co. v. Veatch, 4 Cir., 301 F.2d 434 (1961). The right to object to improper venue, however, could be waived by the defendant, and it was held in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), that when a foreign corporation qualified to do business in a state and appointed an agent to receive service of process, it waived any venue privilege it may have had not to be sued there. After the decision in Neirbo and before the passage of the Judicial Code of 1948, several courts held that if a foreign corporation failed to appoint an agent for the service of process, although the statute required it to do so, there was no consent to be sued and the venue defense was not waived.[2] However, in Knott Corp. v. Furman, 4 Cir., 163 F.2d 199 (1947), the Court of Appeals of this Circuit held that the "consent implied from doing business in the state not only author-izes suit in the courts of the state, with service of process upon a designated state officer, but also waives the provisions of the federal venue statute so that suit can be brought in the federal court, if the elements of federal jurisdiction are present." 163 F.2d at 204. The decision in Knott was based upon the provisions of the Virginia statutes dealing with foreign corporations, which are similar to the applicable provisions of the Maryland Code, particularly Art. 23, sec. 96 (d).

There had been conflicting decisions with respect to the application of the Neirbo rule to cases where non-resident motorists were served with process under substituted service statutes in actions brought in the federal courts. The Supreme Court resolved this conflict in Olberding v. Illinois Central Ry. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953), holding that the operation of a motor vehicle in a state having a substituted service statute does not amount to consent to be sued in a federal court in that state for an accident which occurred therein. The majority of the Court held a waiver of federal venue rights requires an "actual consent", such as the appointment of a process agent by Bethlehem in the Neirbo case. In Lied Motor Car Co. v. Maxey, 8 Cir., 208 F.2d 672 (1953), an automobile case, it was held that the Olberding rule applies to corporations as well as to individuals.

Meanwhile, as part of the Judicial Code of 1948, Congress had enacted 28 U.S. C.A. § 1391(c), which provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

---

1. Process was served under Art. 66½, sec. 115, whereas it should have been served under Art. 23, sec. 96(d). But that error could be easily corrected and defendant has quite properly relied only on its more substantial point.

2. Moss v. Atlantic Coast Line R. Co., 2 Cir., 149 F.2d 701 (1945); Robinson v. Coos Bay Pulp Corp., 3 Cir., 147 F.2d 512 (1945); Knobloch v. M. W. Kellogg Co., 5 Cir., 154 F.2d 45 (1946); Donahue v. M. A. Henry Co., S.D.N.Y., 78 F.Supp. 91 (1948).

■ A principal purpose of Congress in enacting sec. 1391(c) was to remove any possible advantage with respect to venue which a corporation might obtain by failing to observe the licensing requirements of a state in which it does business.

Sec. 1391(c) does not eliminate the Neirbo waiver doctrine, for the Judicial Code of 1948 recognized the well-established principle that venue is waivable. While the Neirbo rule is as valid as ever, the need to invoke it against a defendant corporation will probably be infrequent, in cases where the general venue statute applies, for under the broad provisions of sec. 1391(c) venue will usually be properly laid. See 1 Moore's Federal Practice, 2d ed., para. 0.142 [5–3], p. 1494.

This court must decide: (A) whether venue was properly laid in this district under the provisions of 28 U.S.C.A. § 1391(c); and, if not, (B) whether defendant waived the venue defense as to causes of action arising out of the business which it did in this state and district.

■ (A) The question whether venue was properly laid in this district under 28 U.S.C.A. § 1391(c) depends upon whether the phrase "in which it is incorporated or licensed to do business or is doing business" is satisfied by showing that the defendant was doing business in this district at the time when the cause of action arose, or whether it must be shown that the defendant was doing business in the district at the time when the suit was brought. This question is to be decided as a matter of federal law. Rensing v. Turner Aviation Corp., N.D.Ill., 166 F. Supp. 790; Moore, op. cit., pp. 1498–1499.

There is little authority on the point. In Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 3 Cir., 230 F.2d 511 (1956), an antitrust case, the defendant had registered in Pennsylvania as a foreign corporation, but before the suit was filed it had terminated its registration and activities in Pennsylvania and executed a certificate of withdrawal. The suit sought to enforce a liability incurred in Pennsylvania. Without stating the reasons for its conclusion, the Third Circuit said that the venue requirements of 28 U.S.C.A. § 1391 were not met, and that the suit could not be maintained unless the defendant had waived venue and submitted to that kind of suit in the Eastern District of Pennsylvania.[3] 230 F.2d at 512, 513. The Court then considered the law and the facts and found such waiver and consent. Professor Moore accepts as correct the ruling of the Third Circuit on both points. Moore, op. cit., p. 1494.

■ Nevertheless, the purpose of Congress in enacting sec. 1391(c) can be fully achieved only if foreign corporations—both those which qualify to do business and those which do not qualify—can be sued in the federal court in actions arising out of business done in the state and district where the suit is filed.[4] I believe Congress intended that the venue requirements of sec. 1391(c) may be satisfied by showing that the defendant was doing business in the district at the time the cause of action arose, and that the cause of action arose *out of that business.* Those facts are alleged in the complaint in this case, and are not disputed. The motion to dismiss, therefore, must be denied.

■ (B) The same result may be reached along the waiver route by a proper construction of Neirbo, Knott and Olberding. Although there were cases to the contrary, the Fourth Circuit decided in Knott that the defendant had waived its right to object to venue, despite the

3. Since the Sunbury Wire Rope case was an antitrust case, the Court referred also to sec. 12 of the Clayton Act, 15 U.S.C.A. § 22. For other cases discussing that section, cf. Gem Corrugated Box Co. v. Mead Corp., S.D.N.Y., 189 F.Supp. 584 (1960), and Ross-Bart Port Theatre v. Eagle Lion Films, Inc., E.D.Va., 140 F. Supp. 401 (1954), and cases cited therein.

4. A defendant is adequately protected by the provisions of secs. 1404 and 1406, which, upon a proper showing, permit transfer to a more convenient district.

fact that it had not appointed a resident agent in Virginia and had withdrawn from the district after the cause of action arose and before the suit was filed.[5] That decision would be conclusive here if it were not for the discussion of the Neirbo doctrine in the majority opinion in Olberding. The majority in Olberding held that "actual consent" is needed, and that such consent cannot be found from the mere fact that a motorist drives his automobile through a state of which he is not a resident. The Olberding decision destroyed one of the arguments upon which the conclusion in Knott was reached, but it did not disturb the other arguments relied on by Judge Parker, based on the Virginia statutes, which, as we have seen, are like the relevant Maryland statutes.

The Sunbury Wire Rope decision and Professor Moore seem to agree that if a corporation was licensed to do business in a state at the time the cause of action arose, and if the cause of action arose out of the business done in that state and in the district in which the action is brought, the corporation should be held to have waived the right to rely on the defense of improper venue. There are strong arguments in favor of applying the same rule to a foreign corporation which is doing business in a state in defiance of its licensing laws, especially where those laws provide that if a foreign corporation required by statute to have a resident agent does not have a resident agent, such corporation shall be conclusively presumed to have designated a specific state officer or agency as its true and lawful attorney authorized to accept service. See Art. 23, sec. 96(d), of the Maryland Code and the discussion of the Virginia statutes in Knott.

There is a valid distinction between doing business continually and regularly in a state over a period of months or years, and the act of driving an automobile over the roads of that state. Although neither meets the test of "actual consent", a ruling that regularly doing business amounts to a waiver of federal venue rights, although driving an automobile does not, is supported by the statutory arguments relied on by the Fourth Circuit in Knott and by the purpose of Congress in adopting sec. 1391(c).[6] The distinction was adverted to in Reed v. Charizio, E.D.Va., 183 F.Supp. 52, at 53. The decision in Olberding should not be extended to cover this case.

For each of the foregoing reasons, the motion to dismiss the complaint in this case should be denied.

It is so ordered.

---

5. As we have seen, that conclusion is supported by the recent decision of the Third Circuit in Sunbury Wire Rope. The continuing validity of the conclusion in Knott is also supported by the action of Congress in adopting sec. 1391(c), which gives "doing business" the same effect as being "licensed to do business".

6. The court does not find it necessary to express an opinion as to whether or not a single business act of a corporation could be so significant as also to amount to a waiver.