Otis Elwood PRATT, Administrator of the Estate of Mary Alice Pratt, Appellant,

v.

Michael G. KELLY and John Doe, Appellees.

No. 77–1274.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 14, 1977.

Decided Oct. 20, 1978.

---

Donald B. Irons, Blacksburg, Va. (Neily, Irons & Mitchell, Roanoke, Va., on brief), William O. Smith, Blacksburg, Va. (Spiers, Spiers & Mink, Radford, Va., on brief), for appellant.

William R. Rakes and John S. Edwards, Roanoke, Va. (Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief), for appellee Michael G. Kelly.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief, for appellee John Doe.

Before FIELD, Senior Circuit Judge, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

This case is an appeal from an order of the United States District Court for the Western District of Virginia dismissing plaintiff's complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

Mary Alice Pratt was a passenger in a vehicle driven by defendant, Michael G. Kelly, on the Blue Ridge Parkway in Floyd County, Virginia, which was there involved in a collision, so the complaint says, caused in whole or in part by the defendant John Doe, driver of another car, whose identity is unknown. Miss Pratt died the next day, allegedly as the result of injuries received in the accident. Plaintiff-appellant, her father and administrator, brought this action alleging that the accident, and consequent death, resulted from the negligence of either defendant Kelly or defendant Doe, or their combined negligence.

No diversity of citizenship is alleged. The plaintiff seems to contend that this is an action based upon a law of the United States and that, thus, the district court has jurisdiction under 28 U.S.C. § 1331(a) the general federal question jurisdiction statute.[1] To support the contention, plaintiff asserts that by virtue of 16 U.S.C. § 460a–2 [2] the Blue Ridge Parkway, where the accident occurred, being owned by the United States, is under the jurisdiction of the United States of America. That argument is supplemented by the contention that under 16 U.S.C. § 457 the Virginia wrongful death statute becomes a law of the United States.

Defendants contend that 16 U.S.C. § 457 does not make a State wrongful death statute a law of the United States because the death did not occur at a place which is under the exclusive jurisdiction of the United States. They contend that the Blue Ridge Parkway, where this accident occurred, does not so qualify.

■■■ In support of his contention that Virginia's wrongful death act became a federal law for the purpose of establishing jurisdiction under 28 U.S.C. § 1331, plaintiff

---

1. The complaint states that ". . . the jurisdiction of the District Court is invoked under and by virtue of the provisions of Title 16, Sec. 460a–2, Title 16, Sec. 457, and Title 28, Sec. 1331 of the United States Code. . . ." Of course, if jurisdiction exists either under 28 U.S.C. § 1331(a) or 16 U.S.C. § 457, we should reverse. See *Stokes,* infra, pp. 665–666.

2. 16 U.S.C. § 460a–2 provides in pertinent part, as follows:

"All lands and easements heretofore or hereafter conveyed to the United States by the States of Virginia and North Carolina for the right-of-way for the projected parkway between the Shenandoah and Great Smoky Mountains National Parks . . . shall be known as the Blue Ridge Parkway and shall be administered and maintained by the Secretary of the Interior through the National Park Service, subject to the provisions of sections 1 and 2 to 4 of this title, the provisions of which sections, as amended and supplemented, are extended over and made ap-

plicable to said parkway: *Provided,* That the Secretary of Agriculture is authorized, with the concurrence of the Secretary of the Interior, to connect with the parkway such roads and trails as may be necessary for the protection, administration, or utilization of adjacent and nearby national forests and the resources thereof; *And provided further,* That the Forest Service and the National Park Service shall, insofar as practicable, coordinate and correlate such recreational development as each may plan, construct, or permit to be constructed, on lands within their respective jurisdictions which, by mutual agreement, should be given special treatment for recreational purposes."

It will be noted that this section of the code does not confer exclusive jurisdiction upon the United States. It merely establishes the Blue Ridge Parkway and provides for its administration.

relies upon *Stokes v. Adair*, 265 F.2d 662 (4th Cir. 1959), cert. den. 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62, *Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952), *Olsen v. McPartlin*, 105 F.Supp. 561 (D.Minn.1952), and *Reed v. Charizio*, 183 F.Supp. 52 (E.D.Va.1960). *Stokes, Mater*, and *Olsen* were cases in which it is clear that exclusive jurisdiction over the place where the accident occurred had been ceded, in all respects relevant here, to the United States. *Reed* is not clear as explained below.[3] The reason, in the case of a complete cession of jurisdiction over civil actions, the preexisting State law becomes federal law is that such a result is necessary to prevent a legal void. *Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99–101, 60 S.Ct. 431, 84 L.Ed. 596 (1940). Actions for personal injury or death are transitory and may be brought in any court having jurisdiction over the parties and the subject matter of the case. Wherever the suit is brought, however, the law of the place where the event giving rise to the cause of action occurred will provide the substantive legal basis for a decision of the case. If the accident occurs upon a territory under the exclusive jurisdiction of the United States, in the absence of a federally enacted statute, there would be no law to apply unless the pre-existing State law continued as federal law. Thus, there is a general principle that transfer of political control over an area does not automatically

change its law, but the law of the prior sovereignty remains as law of the successor until clearly abrogated. *Chicago, Rock Island & Pacific Railway Company v. McGlinn*, 114 U.S. 542, 546, 5 S.Ct. 1005, 29 L.Ed. 270 (1885). If, as defendants contend in this case, the State retains jurisdiction over civil actions so far as the ceded territory is concerned, the State law continues to provide the legal basis for adjudicating the rights of parties growing out of an accident occurring in that place, and there is no reason why the State law should be regarded as federal law. *Board of Supervisors of Fairfax County, Virginia v. United States*, 408 F.Supp. 556 (E.D.Va.1976).

■ It is now clear that ownership of land by the United States does not imply a transfer of either total or partial jurisdiction except so far as necessary for the United States to accomplish the purposes for which the land was transferred. In 1940, Congress amended 40 U.S.C. § 255[4] so as to add the following eighth paragraph:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at

---

**3.** That exclusive jurisdiction over the Fort Leavenworth Reservation had been ceded to the United States is apparent from the court's opinion in *Stokes v. Adair*, upon which plaintiff principally relies. In *Mater v. Holley*, the court considered that the federal government had exclusive jurisdiction over Fort McPherson, Georgia, where the State of Georgia retained only "concurrent jurisdiction for the service of state process and the regulation of public utilities thereon." Likewise, the court in *Olsen v. McPartlin* regarded the cession of jurisdiction as exclusive, for the purpose of determining the issue of whether to apply a State statute or federal law, when the State's act of cession did not reserve state jurisdiction over causes of action arising on the reservation. The situation in *Reed v. Charizio* is not so clear. In that case it is not shown whether or not exclusive jurisdiction had been ceded by Virginia to the Unit-

ed States over the Colonial National Parkway. It is only stated that the accident occurred "on a Government reservation located entirely within the confines of the State of Virginia," and that the parties are "situated within a National Park." In that case federal jurisdiction was also based upon diversity of citizenship so that any statements regarding the applicability of 16 U.S.C. § 457 were dicta. The court, however, dismissed the case because of a deficiency in venue. We do not think that case is necessarily inconsistent with our opinion, but, as it may be read to be, it should no longer be considered authoritative.

**4.** The code section existed before 1940 and is entitled: "Title to land to be purchased by United States; acquisition by United States of jurisdiction over lands."

such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

Both before and after the enactment of the quoted eighth paragraph of 40 U.S.C. § 255 it has been held that a State may limit its cession of jurisdiction to the United States. *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940), *James v. Darvo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), *Silas Mason Co. v. Tax Comm'n*, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187 (1937), *Fort Leavenworth RR v. Lowe*, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885), *Waltrip v. Commonwealth*, 189 Va. 365, 53 S.E.2d 14 (1949). In *Waltrip* the court correctly states:

"Even before the Act of Congress, 40 U.S.C.A., sec. 255, the Supreme Court, in *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318, held that the mere ownership of land by the United States does not withdraw it from the jurisdiction of a State and that the respective jurisdictions of the United States and the State depend upon the extent of the State's consent. A State can refuse to grant jurisdiction, and in that event it will be retained by the State if it is consistent with the purposes for which the United States acquired the property. . . .

\*   \*   \*   \*   \*   \*

"See also *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, 127 A.L.R. 821, where the court aptly states, 'It is now settled that the jurisdiction acquired from a State by the United States, whether by consent to the purchase or by cession, may be qualified in accordance with agreements reached by the respective governments. . . . .' "

■ In order to establish lack of jurisdiction in the district court, defendants seek to prove that the State of Virginia did in fact reserve jurisdiction over "all civil . . . matters" in the Blue Ridge Parkway and that, thus, the United States does not have exclusive jurisdiction over that area and the Virginia wrongful death statute does not become a law "of the United States" so as to confer jurisdiction under 28 U.S.C. § 1331. In seeking to show a reservation of jurisdiction, defendants ask us to take judicial notice of the deed by which the State of Virginia conveyed title to the United States and the Acts of the Assembly authorizing the issuance of such a conveyance, which we do without objection.

The deed by which this section of the Blue Ridge Parkway was conveyed by the State of Virginia to the United States[5] contains the following provision:

"Now, therefore, this deed is executed and acknowledged by the duly authorized officers of the Commonwealth of Virginia, and the conveyance hereinafter made is upon the express condition that the respective governmental, legislative, executive and judicial powers and jurisdictions of the Commonwealth of Virginia and the United States of America in and over the said land hereby conveyed shall be such as is defined and provided for by Section 4, Chapter 3, Acts of Assembly of Virginia of 1936, and in Section 19a of the Code as amended by Chapter 382, Acts of Assembly of 1936."

---

5. Deed recorded in Deed Book 59, pages 1 to 16, Office of the Clerk of the Circuit Court of Floyd County, Virginia.

Chapters 3 and 382 of the Acts of 1936, General Assembly of Virginia, contain almost identical provisions.[6] Section 4 of Chapter 3 provides:

"The Commonwealth of Virginia hereby further reserves unto herself exclusive governmental, judicial, executive and legislative powers, and jurisdiction in all civil and criminal matters, except in so far as same may be in conflict with the jurisdiction and powers herein ceded to the United States.[7]

Thus, it is apparent from the deed and Acts of Assembly that exclusive jurisdiction over the Blue Ridge Parkway was not transferred to the United States and that Virginia retains "jurisdiction in all civil . . . . matters."

Further, by the express wording of 16 U.S.C. § 457, upon which appellant principally relies, Virginia's wrongful death act statute does not become a law of the United States in this case. That statute provides as follows:

"In the case of the death of any person by the neglect or wrongful act of another within a national park or other place *subject to the exclusive jurisdiction of the United States*, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." (Emphasis supplied).

The emphasized language shows that, under that statute, only on a federal reservation in which exclusive jurisdiction has been obtained by the United States does a State's civil statute become a law of the United States.

In accord with our opinion is *Fowler v. Dodson*, 159 F.Supp. 101 (E.D.Pa.1958), involving an accident occurring in the Shenandoah National Park. In that case the Act of the Virginia Assembly ceding jurisdiction had retained "concurrent jurisdiction with the courts of the United States of all civil causes of action." The court held that § 457 conferred "no jurisdiction on this court to hear and determine plaintiffs' cause of action."

Even if we consider the plaintiff to claim that § 457 confers federal question jurisdiction because the accident happened on the Blue Ridge "Parkway" which for argument we consider a "national park," see Title 16, U.S.Code, we do not think that § 457 is intended to confer federal question jurisdiction in territory in which the United States does not have exclusive jurisdiction.

In view of Virginia's expressed reservation of jurisdiction in civil cases, we do not think that federal question jurisdiction exists either under 28 U.S.C. § 1331(a) or 16 U.S.C. § 457.

Accordingly, the judgment of the district court is

*AFFIRMED.*

---

**6.** Acts of 1936, General Assembly of Virginia, Chapter 3, Section 4 (approved February 3, 1936) and Chapter 382, Sections 18, 19 and 19–a (approved March 28, 1936). Chapter 3 of the Acts of 1936 appears to be a special act for the Blue Ridge Parkway, while Chapter 382 appears to be an amendment of Sections 18 and 19 of the Code of Virginia and specifically does not amend Chapter 3.

**7.** The provision in Section 19a of Chapter 382 is identical except for the addition of the phrase "over all such lands" following "herself" in the second line of Section 4; Chapter 3.